UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUN CAPITAL PARTNERS III, LP, SUN CAPITAL PARTNERS III QP, LP, and SUN CAPITAL PARTNERS IV, LP,<br><br>Plaintiffs,<br><br>vs.<br><br>NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND,<br><br>Defendant | Civ. A. No. |

## **COMPLAINT**

By and through their undersigned counsel, and for their complaint for declaratory and other relief, plaintiffs state as follows:

### PRELIMINARY STATEMENT

1.     Plaintiffs Sun Capital Partners III, LP, Sun Capital Partners III QP, LP, and Sun Capital Partners IV, LP (each a "Sun Partnership" and collectively the "Sun Partnerships") are each private investment funds.

2.     Each of the Sun Partnerships has at all relevant times owned less than 80% of the voting units, unit value, profits interests, and capital interests of Sun Scott Brass, LLC ("SSB-LLC").  SSB-LLC owns Scott Brass Holding Corporation ("SBHC"), SBHC acquired Scott Brass, Inc. ("SBI") in February 2007, and SBI ceased operations and filed for bankruptcy in the fall of 2008.

3.     SBI was a contributor to a multiemployer pension plan, defendant New England Teamsters & Trucking Industry Pension Fund (the "Pension Fund"), pursuant to a collective bargaining agreement.  SBI effected a "complete withdrawal" (within the meaning of

29 U.S.C. § 1383) from the Pension Fund in the fall of 2008, and the Pension Fund has now assessed approximately $4.5 million of "withdrawal liability" against SBI that the Pension Fund claims it is owed under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381 *et seq.* ("MPPAA").

4.      Recently, the Pension Fund asserted that each of the Sun Partnerships is a "trade or business" that was a member of the same "controlled group" that included SBI (the "SBI Controlled Group"), and thus the Pension Fund contends that each of the Sun Partnerships is jointly and severally liable to the Pension Fund for the SBI Controlled Group's withdrawal liability under applicable provisions of ERISA and MPPAA.

5.      More particularly, the Pension Fund has asserted that the Sun Partnerships collectively formed a *de facto* joint venture or partnership that owned more than 80% of SSB-LLC, and, as a result, the Sun Partnerships collectively should be regarded as the parent entity and SSB-LLC, SBHC, and SBI should be regarded as subsidiary entities in a parent-subsidiary controlled group within the meaning of 26 C.F.R. § 1.1414(c)-2.

6.      Because the Pension Fund's novel *de facto* joint venture or partnership theory of controlled group liability is one that no reported case has ever upheld, is one that the Pension Benefit Guaranty Corporation ("PBGC") has never endorsed, is one that would radically and improperly expand withdrawal liability under MPPAA and ERISA, and is one that would fundamentally impair and interfere with the rights of private investment funds to voluntarily structure their legal relationships among and between one another and their investments in companies, each of the Sun Partnerships brings this complaint for declaratory and other relief.

7.     Specifically, each of the Sun Partnerships seeks a judgment declaring:  (a) that it was never a member of the SBI Controlled Group, and therefore it is not jointly and severally liable for the withdrawal liability that the Pension Fund has assessed against SBI; (b) that it cannot be required to make interim withdrawal liability payments under 29 U.S.C. § 1399(c)(2) and/or 29 U.S.C. § 1401(d) unless and until this Court determines that it was a member of the SBI Controlled Group and thus has the status of an "employer" under MPPAA and ERISA; and (c) that this Court and not an arbitrator has the jurisdiction to decide the foregoing claims.

THE PLAINTIFFS

8.     Each of the Sun Partnerships is a private investment fund that invests in various companies (hereafter "portfolio companies").  None of the Sun Partnerships has its own employees or equipment.  Each of the Sun Partnerships is a passive investment vehicle whose activities consist of committing to make investments in and/or to provide funds to portfolio companies, making investments in and/or providing funds to portfolio companies, and distributing proceeds realized from the operation and/or sale of such portfolio companies.  None of the Sun Partnerships is engaged in business operations, as all such business operations are conducted by the portfolio companies themselves.

9.     Similarly, SSB-LLC is a passive investment holding company that has no employees or equipment of its own and is not engaged in business operations.

10.     Non-party Sun Capital Advisors III, LP ("SCP-III GP") is the general partner of plaintiff Sun Capital Partners III, LP ("SCP-III") and Sun Capital Partners III QP, LP ("SCP-QP").  SCP-III and SCP-QP are hereafter collectively referred to as the "SCP-III Funds."

11.     Non-party Sun Capital Advisors IV, LP ("SCP-IV GP") is the general partner of plaintiff Sun Capital Partners IV, LP ("SCP-IV").   SCP-IV GP wholly owns non-party Sun Capital Partners Management IV, LLC ("SCP-IV MG").

3

12.     SCP-IV MG was retained by SBHC in February 2007 to provide certain consulting services to SBHC and its subsidiaries, and SCP-IV MG in turn contracted with Sun Capital Advisors, Inc. to assist it in providing such services to SBHC and its subsidiaries.

13.     Notably, the services contract between SCP-IV MG and SBHC specifically states that SCP-IV MG is providing services as an "independent contractor," and it further states that nothing in the parties' agreement:

> shall be deemed to constitute the parties hereto as joint venturers, alter egos, partners or participants in an unincorporated business or other separate entity, nor in any manner create any employer-employee or principal-agent relationship between the Company [SBHC] and/or any of its Subsidiaries [*e.g.*, SBI] on the one hand, and the Manager [SCP-IV MG] or any of the Manager's members [*i.e.*, SCP-IV GP], managers, officers or employees on the other hand (notwithstanding the fact that the Company and the Manager may have in common any officers, directors, stockholders, members, managers, employees, or other personnel).

14.     Thus, the SCP-III Funds and SCP-IV have different general partners, none of the Sun Partnerships and none of their general partners has any contractual relationship with SBHC and/or SBI regarding the provision of consulting services, and none of the Sun Partnerships and none of their general partners provided any such services to SBHC and/or SBI.

15.     Similarly, the SCP-III Funds and SCP-IV each have separate independent investment advisory boards, the financial performance of the SCP-III Funds has no direct affect on the financial performance of SCP-IV (and vice versa), and limited partners in the SCP-III Funds who are not also limited partners in SCP-IV do not receive the same investor communications and do not have access to the same websites that are received and made available to limited partners of SCP-IV (and vice versa).

16.     As the Pension Fund was previously apprised, as of June 15, 2009, SCP-III had $10 million in aggregate capital commitments from 31 limited partners and its general partner, SCP-QP had $490 million in aggregate capital commitments from 91 limited partners and its

general partner, and SCP-IV had $1.5 billion in aggregate capital commitments from 239 limited partners and its general partner.  As the Pension Fund also was previously advised, as of the asserted date of SBI's withdrawal from the Pension Fund in late 2008, the aggregate capital commitments and numbers of limited partners for each of the Sun Partnerships was the same or substantially similar.  Moreover, according to the audited financial statements of the SCP-III Funds and the audited financial statements of SCP-IV, as of December 31, 2008: (1) the cost of the SCP-III Funds' investments in SSB-LLC represented less than 1% of the total cost of all of the SCP-III Funds' investments; and (2) the cost of SCP-IV's investments in SSB-LLC represented less than 1% of the total cost of all of SCP-IV's investments.

17.     Additionally, most of the portfolio companies in which SCP-IV has invested are not also portfolio companies in which the SCP-III Funds have invested, and vice versa.  In fact, in 2007 SCP-IV invested in 28 different portfolio companies, only 4 of which were portfolio companies in which one or more of the SCP-III Funds also invested.  Similarly, in 2008 SCP-IV invested in 9 different portfolio companies, only 2 of which were portfolio companies in which one or more of the SCP-III Funds also invested.

18.     Moreover, the SCP-III Funds were formed years before SCP-IV, the SCP-III Funds and SCP-IV do not always invest in the same proportions when they occasionally invest in the same portfolio company, nor do the SCP-III Funds and SCP-IV have any contractual obligation always to invest in the same ownership proportions at the outset when more than one of them occasionally does invest in a particular portfolio company.

19.     Further, from its inception, each Sun Partnership has filed separate annual income tax returns, each maintains separate books and records, and the SCP-III Funds and SCP-IV maintain separate bank accounts and have prepared separate audited annual financial statements.

20.     No taxing authority has ever claimed that two or more of the Sun Partnerships are a *de facto* joint venture or partnership that should collectively file joint venture or partnership tax returns.

21.     Additionally, the Sun Partnerships have never intended to or ever entered into any formal or informal arrangement to form a joint venture or single partnership  among or between themselves.

22.     None of the Sun Partnerships participates in the management of SBI, SBHC or any other portfolio companies.  Independent entities that have their own separate legal existence and personnel, as well as other individuals who are not the agents or employees of the Sun Partnerships, were and are responsible for the management and operation of SBI, SBHC and other portfolio companies.  Further, SBI and SBHC were managed by their own officers and employees (although they also received pursuant to a contract certain services from SCP-IV MG), whereas SSB-LLC was merely part of a passive holding company structure and had no independent business operations or employees of its own.

23.     At all relevant times, SCP-IV owned 70%, SCP-QP owned 29.4%, and SCP-III owned 0.6% of the voting units, value, profits and capital of SSB-LLC.

24.     SSB-LLC owns 100% of the issued and outstanding voting stock of SBHC.

25.     SBHC owns 100% of the issued and outstanding stock of SBI, a Rhode Island manufacturing business that was a contributor to the Pension Fund pursuant to a collective bargaining agreement.

## THE DEFENDANT

26.     Defendant Pension Fund is a multiemployer pension plan within the meaning of 29 U.S.C. § 1002(37)(A) and 29 U.S.C. § 1301(a)(3).

27.     On information and belief, the Pension Fund's administrative offices are located in Burlington, Massachusetts.

## JURISDICTION

28.     This Court has subject matter jurisdiction over the instant disputes pursuant to 28 U.S.C. § 1331, because this action arises under 29 U.S.C. §§ 1381-1383, 1399(c)(2), and 1451(a)(1) and (c).

29.     This Court has authority to award the declaratory relief that the Sun Partnerships are requesting pursuant to 28 U.S.C. § 2201, and this Court has authority to award the injunctive relief that the Sun Partnerships are requesting pursuant to the Federal Arbitration Act (codified as amended at 9 U.S.C. §§ 1 *et seq.*), which is made applicable to MPPAA arbitrations by 29 U.S.C. § 1401(b)(3).

30.     This Court has personal jurisdiction over the Pension Fund because the Pension Fund regularly conducts business in the Commonwealth of Massachusetts.

## VENUE

31.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and 29 U.S.C. § 1451(d) because the Pension Fund resides in this District, and, pursuant to 29 U.S.C. § 1451(d), because the Pension Fund is administered and regularly conducts business in this District.  Venue also is proper in this District pursuant to 9 U.S.C. § 4 for the injunctive relief that each of the Sun Partnerships is requesting, as the arbitration to be enjoined is filed and is pending in this District.

RELEVANT LEGAL BACKGROUND

32.     A multiemployer pension plan may assess "withdrawal liability" against an entity

that it deems to have effected a "withdrawal" from the plan.  *See* 29 U.S.C. §§ 1381(a),

1381(b)(2), 1383(a)(2).

33.     The assessed "withdrawal liability" is supposed to be the withdrawing entity's

proportionate share of vested but unfunded pension liabilities, the amount of which is to be

calculated according to actuarial assumptions and formulae prescribed by MPPAA and

implementing regulations of the PBGC.  *See, e.g.*, 29 U.S.C. §§ 1381(b)(1), 1391, 1393.

34.     Under ERISA and MPPAA, however, the withdrawing entity is not the sole entity

responsible for withdrawal liability.  Instead, all "trades or businesses" that are under "common

control" with the withdrawing entity on the date of withdrawal are deemed an "employer" that is

jointly and severally liable to the multiemployer plan for the assessed withdrawal liability.

29 U.S.C. §§ 1301(a)(14)(A) & 1301(b)(1).  This is true even if a trade or business does not have

an obligation to contribute to the plan pursuant to a collective bargaining agreement.

35.     Thus, with certain exceptions unnecessary to detail at this juncture, for an entity

that has no contribution obligations to be held responsible for another entity's withdrawal

liability, the non-contributing entity must (1) be a "trade or business" and (2) be a member of a

"controlled group" that included the withdrawing entity on the date of withdrawal.

36.     While MPPAA and ERISA do not expressly define what constitutes a "trade or

business," courts generally have held that even a controlling shareholder is not regarded as a

"trade or business" if that shareholder does not participate regularly, actively and continuously in

the management and operations of the entity whose shares the shareholder owns.  *See, e.g.*,

*Central States, Southeast & Southwest Areas Pension Fund v. White*, 258 F.3d 636, 640 n.3 &

641-43 (7th Cir. 2001); *see also Central States, Southeast & Southwest Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001).

37.     And numerous Supreme court and federal appellate court decisions construing the same "trade or business" provisions of the Internal Revenue Code have held in analogous circumstances that passive investment activities like those undertaken by the Sun Partnerships do not constitute a "trade or business." *See, e.g.*, *Snyder v. Commissioner*, 295 U.S. 134 (1935); *Higgins v. Commissioner*, 312 U.S. 212 (1941); *Whipple v. Commissioner*, 373 U.S. 193 (1963); *Moller v. U.S.*, 721 F.2d 810 (Fed. Cir. 1983); *Spellman v. Commissioner*, 845 F.2d 148 (7th Cir. 1988); *Zink v. U.S.*, 929 F.2d 1015 (5th Cir. 1991); *LDL Research & Development II, Ltd. v. Commissioner*, 124 F.3d 1338 (10th Cir. 1997).

38.     Court decisions and IRS general counsel memoranda construing other similar provisions of the Internal Revenue Code also have found that investment activities like those of the Sun Partnerships do not qualify as "trades or businesses" for tax purpose. *See, e.g.*, *deKrause v. Comm'r*, 33 T.C.M. 1362 (1974); GCM 39406 (Mar. 29, 1985); GCM 39037 (Sept. 20, 1983).

39.     The existence of and membership in a "controlled group" is determined according to tests set forth in the Internal Revenue Code and elaborated in the Treasury Department's regulations. *See, e.g.*, 29 U.S.C. §§ 1301(a)(14)(A) & 1301(b)(1); 29 C.F.R. §§ 4001.2, 4001.3(a)(1); 26 U.S.C. § 414(c); 26 C.F.R. §§ 1.414(c)-1, 1.414(c)-2.

40.     In general, there are three types of "controlled groups": (1) "parent-subsidiary" controlled groups; (2) "brother-sister" controlled groups; and (3) "combined" controlled groups (which include some combination of parent-subsidiary and brother-sister controlled groups). *See* 26 C.F.R. § 1.414(c)-2(a).

41.     Pursuant to Treasury Department Regulations, "[t]he term 'parent-subsidiary group of trades or businesses under common control' means one or more chains of ***organizations*** conducting trades or businesses connected through ownership of a ***controlling interest*** with a common parent…."  26 C.F.R. § 1.414(c)-2(b)(1) (emphasis added).

42.     A "controlling interest" is defined as ownership of 80% or more of the voting stock or stock value of a corporation, or ownership of an 80% or greater profits or capital interest in a partnership.  *See* 26 C.F.R. §§ 1.414(c)-2(b)(2)(i)(A) & (C).

43.     According to these definitions, none of the Sun Partnerships individually has a "controlling interest" in SSB-LLC, SBHC, or SBI, and therefore none of the Sun Partnerships individually can be deemed a member of a parent-subsidiary controlled group that includes SBI.

44.     The term "organization," as it is used in the Treasury Department Regulations, is defined as "a sole proprietorship, a ***partnership*** (as defined in section 7701(a)(2), a trust, an estate, or a corporation."  26 C.F.R. § 1.414(c)-2(a) (emphasis added).

45.     Section 7701(a)(2) of the Internal Revenue Code (hereafter "Section 7701(a)(2)"), in turn, defines the term "partnership" as including "a syndicate, group, pool, ***joint venture***, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on…."  26 U.S.C. § 7701(a)(2) (emphasis added).

46.     Further, the notion that formally and functionally separate and distinct partnerships or other such legal entities can be found to have formed a *de facto* joint venture or partnership with respect to some of their investment activities is not contemplated or suggested anywhere in the relevant text of ERISA, MPPAA or applicable regulations, including 26 C.F.R. § 1.414(c)-2.

47.     Despite the existence of private investment funds similar to the Sun Partnerships for more than 20 years, to date the Internal Revenue Service, the Pension Benefit Guaranty Corporation, and the courts have never held -- for tax purposes, for purposes of ERISA or MPPAA, or for other purposes -- that the separate corporate existence and organization of private investment funds should or can be disregarded, and they should collectively be regarded as a single *de facto* joint venture or partnership whenever more than one fund has an ownership interest in the same portfolio company.

## RELEVANT FACTUAL BACKGROUND

48.     In November 2008, SBI filed for Chapter 11 bankruptcy protection.

49.     On or about March 9, 2009, the Pension Fund sent a notice of default to SSB-LLC, SCP-III, and SCP-IV.  This was the first notice that any of the Sun Partnerships received of a withdrawal liability assessment against SBI.

50.     On April 1, 2009, SCP-III and SCP-IV (the only Sun Partnerships to whom the March 2009 default notice was addressed) responded by letter to the Fund's March 9, 2009 notice of default.  In that letter, SCP-III and SCP-IV advised that neither was ever a member of the SBI Controlled Group.  Nevertheless, while expressly and impliedly preserving all their rights and remedies, SCP-III and SCP-IV demanded review by the Pension Fund of any withdrawal liability assessment against any of the Sun Partnerships pursuant to 29 U.S.C. § 1399(b)(2)(A) insofar as such provisions were contended by the Pension Fund to be applicable to the Sun Partnerships.

51.     By letter dated May 15, 2009, the Pension Fund notified the Sun Partnerships that it was recalculating the original withdrawal liability assessment.  It also agreed that the statutory time period to request review of any withdrawal liability assessment would begin to run from the

date that the Pension Fund sent its notice of the recalculated withdrawal liability amount to the Sun Partnerships.

52.     In a letter dated May 29, 2009, the Pension Fund notified the Sun Partnerships that the recalculated withdrawal liability of Scott Brass, Inc. was $4,516,539.  Thereafter, the Pension Fund served requests for additional information on the Sun Partnerships regarding each of the Sun Partnership's ownership interests in SSB-LLC, SBHC, and SBI, as well as information regarding the limited partners of each of the Sun Partnerships, the companies owned by each of the Sun Partnerships, and related information.

53.     In July 2009, each of the Sun Partnerships answered the Pension Fund's requests for information, and in August 2009 each of the Sun Partnerships requested review of the Pension Fund's assessment of Scott Brass, Inc.'s withdrawal liability insofar as the Pension Fund contended that such review was required to preserve each of the Sun Partnerships' rights to contest any assertions by the Pension Fund that one or more of the Sun Partnerships was a member of the SBI Controlled Group.

54.     The Pension Fund did not respond to any of the Sun Partnerships' August 2009 requests for review within 120 days.

55.     Nevertheless, before the time for commencing arbitration had expired under 29 U.S.C. § 1401(a)(1), on February 5, 2010, each of the Sun Partnerships and the Pension Fund entered into a tolling and standstill agreement.  The Pension Fund agreed to toll and extend all deadlines and time periods prescribed by ERISA and/or MPPAA through and including April 23, 2010, including, but not limited to, the deadline for demanding arbitration pursuant to MPPAA (if such arbitration were found to be required).

56.     On April 16, 2010, the parties entered into a second tolling and standstill agreement that further tolled and extended all deadlines and time periods prescribed by ERISA and/or MPPAA through and including June 7, 2010.

57.     On April 20, 2010, the Pension Fund sent a letter to the Sun Partnerships, which asserted that each of the Sun Partnerships was jointly and severally liable for SBI's assessed withdrawal liability.  The Pension Fund claimed that the Sun Partnerships were collectively a *de facto* joint venture (or partnership) such that their ownership interests should be aggregated when applying 26 C.F.R. §1.414(c)-2(b) despite there being no express mention of such combinations within the language of that regulation or any other applicable statute or regulation.  The Pension Fund then claimed that the Sun Partnerships were collectively a single parent of a parent-subsidiary controlled group that included SSB-LLC, SBHC, and SBI.  (A true and correct copy of the Pension Fund's letter is attached hereto as Exhibit 1.)

58.     Specifically, the Pension Fund's April 20 letter asserts that "the evidence of a mutual undertaking to carry out an enterprise for profit by the three Sun Capital Partnerships and other indicia of a partnership conducting a trade or business is substantial."  (*See* Ex. 1 at 2.)

59.     The Pension Fund's April 20 letter then proceeded to assert that this "substantial evidence" consisted of three things:

(1)     the fact that the Sun Partnerships collectively had a controlling interest in five other companies in addition to SSB-LLC (even though these six companies represented less than ten percent of the total number of companies in which the Sun Partnerships had invested);

(2)     the fact that the largest investor and general partner in each of the Sun Partnerships -- *i.e.*, SCP-III GP  and SCP-IV GP -- was allegedly controlled by the same two individuals (even though SCP-III GP had a less than 24% capital or profits interest in SCP-QP

and a less than 48% capital or profit interest in SCP-III, and SCP-IV GP had a less than 34% capital or profit interest in SCP-IV); and

> (3)     the fact that these two individuals "as the co-CEO's of Sun Capital Partners, Inc. 'have invested in and managed more than 220 companies worldwide since Sun Capital's inception in 1995' with '$8 billion of equity capital under management.'"

60.     The source for the quotations in paragraph 53(3) is not referenced in the Pension Fund's April 20 letter, but it is believed to be a quote from the "OVERVIEW" section of Sun Capital, Inc.'s website.  This "OVERVIEW" section in relevant part states, "Sun Capital affiliates have invested in and managed more than 220 companies worldwide since Sun Capital's inception in 1995," and further states, "Sun Capital has approximately $8 billion of equity capital under management."

61.     And while the Pension Fund's April 20 letter cites to a case from the Eleventh Circuit that the Pension Fund claims supports its position, that case involved a family cattle business that was found to be a husband-and-wife partnership.  This Eleventh Circuit case does not even mention Section 7701(a)(2) -- let alone state that private investment funds like the Sun Partnerships or other unrelated entities properly can be characterized as a collective *de facto* joint venture or partnership in a case like this one.  Further, the cited Eleventh Circuit case involved a "brother-sister" controlled group, not a "parent-subsidiary" controlled group like the one that the Pension Fund asserts exists in this case.

## FIRST CLAIM FOR RELIEF

62.     Each of the Sun Partnerships reasserts and realleges paragraphs 1-61 as though set forth fully herein.

63.     An actual controversy currently exists between each of the Sun Partnerships and the Pension Fund respecting whether the Sun Partnerships collectively constitute a *de facto* joint venture or partnership with respect to their ownership interests in SSB-LLC.

64.     Each of the Sun Partnerships is entitled to a judgment declaring that it does not, collectively with one or more other Sun Partnerships, constitute a *de facto* joint venture or partnership with respect to its ownership interests in SSB-LLC.

65.     This is so, among other reasons, because none of the Sun Partnerships has ever expressly or impliedly agreed to form a *de facto* joint venture or partnership with another Sun Partnership with respect to SSB-LLC, because no such *de facto* joint venture or partnership should or can now be established by implication or operation of law, and because nothing in the relevant statutes or regulations warrants establishing such a new form of controlled group liability.

66.     Further, because the Sun Partnerships do not collectively constitute a *de facto* joint venture or partnership with respect to their ownership interests in SSB-LLC, each of the Sun Partnerships is entitled to a judgment declaring that it was not a member of the SBI Controlled Group on the date of SBI's withdrawal from the Pension Fund and that it is therefore not jointly and severally liable for the SBI Controlled Group withdrawal liability.

67.     The requested judgment from this Court declaring the rights and responsibilities of the parties will resolve the current controversies and is an appropriate exercise of this Court's discretion pursuant to 28 U.S.C. § 2201.

68.     In addition, each of the Sun Partnerships is entitled to recover its attorneys' fees and costs incurred in connection with this lawsuit pursuant to applicable provisions of MPPAA and ERISA.

SECOND CLAIM FOR RELIEF

69.     Each of the Sun Partnerships reasserts and realleges paragraphs

1-68 as though set forth fully herein.

70.     An actual controversy currently exists between the Sun Partnerships and the

Pension Fund respecting whether one or more of the Sun Partnerships is a "trade or business"

within the meaning of the controlled group liability provisions of ERISA and MPPAA.

71.     Each of the Sun Partnerships is entitled to a judgment declaring that it is not a

"trade or business" with respect to its ownership interests in SSB-LLC.

72.     This is so, among other reasons, because the activities of each of the Sun

Partnerships are investment activities similar to those that have repeatedly been found not to

constitute a "trade or business" by numerous courts, and because none of the Sun Partnerships

participates in the day-to-day management and control of the portfolio companies in which they

have invested.

73.     While in 2007 the PBGC opined that private equity funds may constitute "trades

or businesses" with respect to single employer pension plans, no published opinion of a Court

has ever expressly agreed with the PBGC's analysis in this regard, and this Court should reject

the PBGC's opinions insofar as they are found relevant to the instant dispute because they

conflict with long-established law and ignore the voluntary legal relationships and forms of

organization that have been established and followed between and among private investment

funds, their general and limited partners, and investment advisors to such funds.

74.     Further, because none of the Sun Partnerships is a "trade or business" within the

meaning of MPPAA, each of the Sun Partnerships is entitled to a judgment declaring that it was

not a member of the SBI Controlled Group on the date of SBI's withdrawal from the Pension

Fund and that it is therefore not jointly and severally liable for the SBI Controlled Group withdrawal liability.

75.     The requested judgment from this Court declaring the rights and responsibilities of the parties will resolve the current controversies and is an appropriate exercise of this Court's discretion pursuant to 28 U.S.C. § 2201.

76.     In addition, each of the Sun Partnerships is entitled to recover its attorneys' fees and costs incurred in connection with this lawsuit pursuant to applicable provisions of MPPAA and ERISA.

<u>THIRD CLAIM FOR RELIEF</u>

77.     Each of the Sun Partnerships reasserts and realleges paragraphs 1-76 as though set forth fully herein.

78.     In general, and subject to certain recognized exceptions, under 29 U.S.C. § 1399(c)(2), entities who have had the status of "employers" at some point in time and who are assessed withdrawal liability are required to make payments according to the schedule set forth by the multiemployer pension plan notwithstanding any arbitration or litigation brought by such a current or former "employer" to challenge the plan's assessment of such liability.

79.     Notwithstanding 29 U.S.C. § 1399(c)(2), when entities (like the Sun Partnerships) contend that they were never members of a controlled group that included the withdrawing entity and therefore were never "employers" within the meaning of the statute, they are not obligated to make interim withdrawal liability payments until and unless a court concludes that they are or were members of a controlled group that includes or included the withdrawing entity and therefore have the status of "employers" under MPPAA and ERISA.  *See, e.g.*, *Bd. of Trustees of Trucking Employees of No. Jersey Welfare Fund, Inc. Pension Fund v. Centra*, 983 F.2d 495,

502 n.10 (3d Cir. 1992); *Flying Tiger Line v. Teamsters Pension Trust Fund*, 830 F.2d 1241,

1251 (3d Cir. 1987); *Tri-State Rubber & Equipment, Inc. v. Central States Southeast &*

*Southwest Areas Pension Fund*, 661 F. Supp. 46, 47-48 (E.D. Mich. 1987).

80.     While the Sun Partnerships brought the foregoing cases to the attention of the

Pension Fund's counsel prior to the filing of this lawsuit by means of a letter (a copy of which is

attached as Exhibit 2), and asked for the Pension Fund to advise the Sun Partnerships whether in

light of the same they would agree not to pursue interim withdrawal liability payments, the

Pension Fund has not agreed to refrain from pursuing such payments.

81.     Thus, an actual controversy currently exists between each of the Sun Partnerships

and the Pension Fund regarding each of the Sun Partnerships' obligations to make interim

withdrawal liability payments during the pendency of this lawsuit.

82.     Each of the Sun Partnerships is entitled to a declaration that it is not obligated to

make interim withdrawal liability payments under 29 U.S.C. § 1399(c)(2) until and unless this

Court determines that it was a member of the SBI Controlled Group and was therefore an

"employer" for purposes of MPPAA and ERISA.

83.     This is so, among other reasons, because the authorities cited above so hold.

Moreover, a contrary holding would entitle multiemployer pension plans to demand interim

liability payments from entities who have never been adjudged members of a controlled group

and for which there is no authority to suggest that they should be adjudged members of a

controlled group -- a result that would raise fundamental doubts regarding the constitutionality of

MPPAA as so-applied.

84.     The requested judgment from this Court declaring the rights and responsibilities of the parties will resolve the current controversies and is an appropriate exercise of this Court's discretion pursuant to 28 U.S.C. § 2201.

85.     In addition, each of the Sun Partnerships is entitled to recover its attorneys' fees and costs incurred in connection with this lawsuit pursuant to applicable provisions of MPPAA and ERISA.

FOURTH CLAIM FOR RELIEF

86.     Each of the Sun Partnerships reasserts and realleges paragraphs 1-85 as though set forth fully herein.

87.     Pursuant to MPPAA, entities that are indisputably current or former "employers" within the meaning of 29 U.S.C. § 1301(b)(1) are generally required to arbitrate any challenge that they may want to bring to a multiemployer plan's assessment of withdrawal liability.

88.     The rule is different, however, for entities like the Sun Partnerships that contend that they have never been "employers" within the meaning of 29 U.S.C. § 1301(b)(1).  Such entities cannot be compelled to arbitrate their employer status *per se* before an arbitrator pursuant to the statute until and unless a court first determines that such entities are or were "employers" within the meaning of the statute.  *See, e.g.*, *N.Y. State Teamsters Conf. Pension & Retirement Fund v. Express Serv., Inc.*, 426 F.3d 640, 646 (2d Cir. 2005); *Galgay v. Beaverbrook Coal Co.,* 105 F.3d 137, 141 (3d Cir. 1997); *Rheem Mfg. Co. v. Cent. States Southeast & Southwest Areas Pension Fund,* 63 F.3d 703, 705-06 & n. 3 (8th Cir. 1995); *Doherty v. Teamsters Pension Trust Fund of Phila. & Vicinity,* 16 F.3d 1386, 1390 (3d Cir. 1994); *Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 122 (4th Cir. 1991); *Mason & Dixon Tank Lines, Inc. v. Cent. States, Southeast & Southwest Areas Pension Fund,* 852 F.2d 156, 167 (6th Cir. 1988); *Banner Indus.,*

*Inc. v. Central States, Southeast & Southwest Areas Pension Fund*, 657 F. Supp. 875, 882 (N.D. Ill. 1987).

89.     Nevertheless, out of an abundance of caution the Sun Partnerships have timely filed on the same date as this lawsuit an arbitration demand with the American Arbitration Association (the arbitral forum prescribed by Pension Fund rules) so as to preserve the Sun Partnerships' rights to raise any defenses to the Pension Fund's withdrawal liability claims that are found to be arbitrable.

90.     While the Sun Partnerships have asked for the Pension Fund's agreement to stay the pending arbitration pending decision of the employer status issues raised by this lawsuit, the Pension Fund has not responded to the Sun Partnerships request for an agreement as to such a stay and has advised that it believes the Sun Partnerships should file for arbitration.

91.     Accordingly, an actual controversy currently exists between each of the Sun Partnerships and the Pension Fund regarding the arbitrability of the claims raised in this lawsuit.

92.     Each of the Sun Partnerships is entitled to a declaration that it is not obligated to arbitrate the claims raised herein until and unless this Court determines that the Sun Partnership is or was a member of the SBI Controlled Group and is therefore an "employer" for purposes of MPPAA and ERISA.

93.     This is so, among other reasons, because the authorities cited above so hold. Moreover, a contrary holding would entitle multiemployer pension plans to force entities to engage in arbitration who have never been adjudged "employers" subject to MPPAA's arbitration requirements and for which there is no authority to suggest that they should be adjudged "employers" -- a result that would raise fundamental doubts regarding the constitutionality of MPPAA as so-applied.

94.     The requested judgment from this Court declaring the rights and responsibilities of the parties will resolve the current controversies and is an appropriate exercise of this Court's discretion pursuant to 28 U.S.C. § 2201.

95.     In addition, each of the Sun Partnerships is entitled to recover its attorneys' fees and costs incurred in connection with this lawsuit pursuant to applicable provisions of MPPAA and ERISA.

96.     Finally, each of the Sun Partnerships is entitled to injunctive relief staying the pending arbitration until and unless this Court determines that each of the Sun Partnerships has the status of an "employer" under MPPAA and is therefore obligated to arbitrate its claims.

## PRAYER FOR RELIEF

**WHEREFORE**, each of the Sun Partnerships prays for relief as follows:

A.   A declaration that each of the Sun Partnerships was never a member of the SBI Controlled Group and is therefore not jointly and severally liable for the withdrawal liability that the Pension Fund has assessed against SBI;

B.   Additionally, a declaration that no Sun Partnership can be required to make interim withdrawal liability payments under 29 U.S.C. §§ 1399(c)(2) and/or 1401(d) until and unless this Court first determines that the Sun Partnership was a member of the SBI Controlled Group and thus has the status of an "employer" under MPPAA and ERISA;

C.   Additionally, a declaration that no Sun Partnership's claims in this lawsuit are arbitrable pursuant to MPPAA' s mandatory arbitration provisions until and unless this Court first determines that that Sun Partnership was a member of the SBI Controlled Group and thus has the status of an "employer" under MPPAA and ERISA, and, insofar as is necessary, preliminary and permanent injunctive relief staying the pending arbitration until and unless this Court determines that the Sun Partnership has the status of an "employer" under MPPAA and ERISA;

D.   Additionally, an award to each of the Sun Partnerships of its attorneys' fees and costs pursuant to applicable provisions of ERISA and/or MPPAA; and

E.   Any and all other further relief to which each of the Sun Partnerships may be found entitled.

Respectfully submitted,

SUN CAPITAL PARTNERS III, LP,
SUN CAPITAL PARTNERS III QP, LP, and
SUN CAPITAL PARTNERS IV, LP

By their attorneys:

/s/ Theodore J. Folkman
John D. Hanify (BBO No. 219880)
Theodore J. Folkman (BBO No. 647642)
HANIFY & KING, Professional Corporation
One Beacon St.
Boston, Mass. 02108
(617) 423-0400
jdh@hanify.com, tjf@hanify.com

Drew G.A. Peel*
Jeffrey S. Quinn*
Zubin P. Khambatta*
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
drew.peel@kirkland.com
jeffrey.quinn@kirkland.com
zubin.khambatta@kirkland.com

* *Pro hac vice* applications pending

Dated: June 4, 2010
565605