UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUN CAPITAL PARTNERS III, LP, SUN CAPITAL PARTNERS III QP, LP, and SUN CAPITAL PARTNERS IV, LP, <br><br> Plaintiffs/Counter-defendants, <br><br> vs. <br><br> NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND, <br><br> Defendant/Counter-plaintiff <br><br> vs. <br><br> SCOTT BRASS HOLDING CORP. AND SUN SCOTT BRASS, LLC, <br><br> Third Party Defendants. | Civ. A. No. 10-10921 DPW <br><br> Hon. Douglas P. Woodlock, USDC (Presiding) <br><br> Hon. Marianne B. Bowler, USMJ |

**PLAINTIFFS' OPPOSITION TO MOTION TO AMEND COMPLAINT**

Plaintiffs/counter-defendants Sun Capital Partners III, LP, Sun Capital Partners III QP, LP, and Sun Capital Partners IV, LP, (collectively "Plaintiffs"), by and through their undersigned counsel, submit this memorandum in opposition to defendant/counter-plaintiff New England Teamsters and Trucking Industry Pension Fund's ("NETTIPF's") Motion for Leave to Amend the Complaint.

**I.    INTRODUCTION:**

At the hearing on April 19, 2011, the Court announced that it would grant a motion by NETTIPF to amend its pleading to add an "evade-or-avoid" counter-claim under the relevant provision of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1453, found at 29 U.S.C. § 1392(c).  (Hr'g Tr. 37:6-10, Apr. 19,

2011.)[1]  Recognizing that the Court has already decided this issue without considering formal opposition or argument, Plaintiffs file this opposition to preserve their arguments for the record.

## II.  <u>ARGUMENT</u>

NETTIPF's motion for leave to amend its pleading should be denied because (1) such an amendment would be futile; (2) the motion is untimely; and (3) permitting NETTIPF to amend its complaint at this late stage in the proceedings would unfairly prejudice Plaintiffs.

### A.    Futility

*First*, NETTIPF's proposed amendment to its complaint is futile.  "Futility of the amendment constitutes an adequate reason to deny the motion to amend." *Todisco v. Verizon Commc'ns, Inc.*, 497 F.3d 95, 98 (1st Cir. 2007) (citing *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006)).  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) (citing 3 *Moore's Federal Practice* ¶ 15.08[4], at 15-80 (2d ed. 1993); *Vargas v. McNamara*, 608 F.2d 15, 17 (1st Cir. 1979)).  In this case, NETTIPF's "evade-or-avoid" counter-claim is not one upon which relief could be granted for several reasons.

(1) For MPPAA withdrawal liability to attach to an entity that is not a contributor to a multiemployer pension plan, including as a result of the application of 29 U.S.C. § 1392(c), the entity must be included as part of the "employer" within the meaning of 29 U.S.C. § 1301(b)(1).   *See* 29 U.S.C. § 1381(a) ("employer" is liable for withdrawal from a multiemployer plan); *id.* § 1301(b)(1) ("trades or businesses" under "common control" are treated as "single employer" for purposes of ERISA and

---

[1] At this time, NETTIPF's motion to amend its pleading is still pending, and therefore there is no amended pleading in the record for Plaintiffs to answer.  Plaintiffs will file an  amended answer within the proper time after the Court grants NETTIPF's motion to amend.

K&E 19111454.7

MPPAA); *see also McDougall v. Pioneer Ranch Ltd. P'ship*, 494 F.3d 571, 577 (7th Cir. 2007) ("To impose withdrawal liability on an organization other than the one obligated to the Fund, two conditions must be satisfied: 1) the organization must be under 'common control' with the obligated organization, and 2) the organization must be a trade or business.").  Plaintiffs are passive investment vehicles—not trades or businesses—and therefore are not employers that could be made subject to withdrawal liability.  *See, e.g.*, *Whipple v. Comm'r*, 373 U.S. 193, 202-03 (1963) (passive investment activity not trade or business); *Higgins v. Comm'r*, 312 U.S. 212, 217-18 (1941) (same); *Snyder v. Comm'r*, 295 U.S. 134, 139 (1935) (same); *LDL Research & Dev. II, Ltd. v. Comm'r*, 124 F.3d 1338, 1342 (10th Cir. 1997) (same); *Zink v. United States*, 929 F.2d 1015, 1021 (5th Cir. 1991) (same); *Spellman v. Comm'r*, 845 F.2d 148, 150 (7th Cir. 1988) (same).

(2) For liability to attach as a result of the application of 29 U.S.C. § 1392(c), a transaction must be identified that has as a principal purpose the evading or avoiding of withdrawal liability.[2]  NETTIPF argues that the decision-making to split the ownership such that no Plaintiff owned at least 80% of Sun Scott Brass, LLC ("SSB-LLC") was such a transaction.  (Memo. in Supp. 3-5.)  Yet this was not an independent transaction, but a decision made on behalf of each of the Plaintiffs on how to invest in Scott Brass, Inc. ("SBI").  *See, e.g.*, *Cuyamaca Meats, Inc. v. San Diego & Imperial Counties Butchers' & Food Employers' Pension Trust Fund*, 827 F.2d 491, 499 (9th Cir. 1987) ("Employer proposals made during negotiations toward a collective bargaining agreement, and motivated, at least in part, by a desire

---

[2] "If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction."  29 U.S.C. § 1392(c).

to minimize withdrawal liability, are not transactions entered into in order to evade or avoid withdrawal liability within the meaning of 29 U.S.C. § 1392(c).").   This ownership split was categorically not a transaction, let alone an "evade-or-avoid" transaction.

(3) Under 29 U.S.C. § 1392(c), a transaction with the principal purpose to evade or avoid withdrawal liability is *disregarded* and the determination of which parties incur that liability, including those jointly and severally liable as members of the same controlled group as a withdrawing employer, is made without regard to such transaction.  *See, e.g.*, *Sherwin-Williams Co. v. N.Y. State Teamsters Conference Pension, Ret. Fund*, 158 F.3d 387 (6th Cir. 1998); *Chi. Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Louis Zahn Drug Co.*, 890 F.2d 1405 (7th Cir. 1989).  In this case, NETTIPF argues that the transaction to be disregarded is the agreement to form SSB-LLC such that Sun Capital Partner IV, LP had a 70% ownership interest and Sun Capital Partners III, LP and Sun Capital Partners III QP, LP had a 30% ownership interest.  (Mem. in Supp. 3-5.)  But disregarding the agreement to form SSB, LLC, which owned more than 80% of Scott Brass Holding Corp., which, in turn, owned more than 80% of the withdrawing employer, SBI, would sever any relevant connection between Plaintiffs and SBI.  The Plaintiffs could not be considered members of the same controlled group as SBI under NETTIPF's "evade-or-avoid" theory, and, therefore, could not be jointly and severally liable for SBI's withdrawal liability on the basis of such a claim.

Moreover, NETTIPF cannot identify any transaction that, if disregarded, would result in any of the Plaintiffs incurring controlled group liability.  For example, if the

4

formation of Scott Brass Holding Corp. was disregarded, this too would sever any ownership link between the Plaintiffs and SBI.  If any portion of Plaintiffs' investment in SSB-LLC was disregarded ($2.1 million was invested by Sun Capital Partners IV, LP and $0.9 million was invested by Sun Capital Partners III, LP and Sun Capital Partners III QP, LP), then this would not change the basic 70/29.4/0.6 ownership structure of SSB-LLC, and it would remain the case that no Plaintiff was a member of the SBI controlled group.

What NETTIPF seeks is to make Sun Capital Partners IV, LP jointly and severally for the withdrawal liability of SBI by claiming it should be considered the 100% owner of SSB-LLC.  (Am. Answer ¶ 54.)  But, even if NETTIPF's allegations were accepted as true, that is not the result of a successful "evade or avoid" argument under 29 U.S.C. § 1392(c).  NETTIPF does not, and cannot, point to a single legal authority that would permit it to substitute the formation of SSB-LLC that actually occurred with an entirely fictional event in which SSB-LLC was formed with its sole owner and member being Sun Capital Partners IV, LP.  The "evade-or-avoid" provision of MPPAA simply does not allow pension funds to recover on the basis of such fictional occurrences.  *Teamsters Pension Trust Fund of Phila. & Vicinity v. Cent. Mich. Trucking, Inc.*, 857 F.2d 1107, 1109 (6th Cir. 1988) ("There is no congressional mandate to engage in legal gymnastics in order to guarantee pension plans at all costs.").

(4) Courts that apply 29 U.S.C. § 1392(c) are consistent in affirming the proposition that an "evade-or-avoid" transaction can only be found when withdrawal liability has already attached or a transaction is undertaken when such liability is imminent and

will attach in the near future.  *See, e.g.*, *Sherwin-Williams*, 158 F.3d 387; *Louis Zahn Drug*, 890 F.2d 1405.   Neither of these conditions existed at the time that the Plaintiffs formed SSB, LLC.

(5) The "evade-or-avoid" provision of MPPAA was not intended to apply to such things as the formation of SSB-LLC when, as part of such a formation, the decision was made to reduce the risk that certain persons or entities would be jointly and severally liable for pension liabilities that they did not create and that they could not prevent. Rather it was intended to apply to affirmative "transactions" that are disregarded, resulting in the recovery of assets that should have been available to meet withdrawal liability obligations.  *See, e.g.*, *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993) ("Manufacturing [employer], Mowers and Herrmann participated in a scheme, the principal purpose of which was to evade or avoid withdrawal liability by depriving Manufacturing of funds sufficient to meet its pension liability."); *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Ill. Range, Inc.*, 186 F.R.D. 498, 501 (N.D. Ill. 1999) (Bobrick, Mag. J.); *Connors v. Marontha Coal Co.*, 670 F. Supp. 45, 46-47 (D.D.C. 1987) (disregarding transfer of assets and stock and payment of dividends).   In deciding how to structure the ownership of SSB-LLC, Plaintiffs or their agents were not depriving NETTIPF of assets that the statute intended to make available to satisfy pension liabilities or should be made available for such purposes.

(6) Because NETTIPF's "evade-or-avoid" theory would deter partnership funds like the Plaintiffs from investing in companies with underfunded pension liabilities, it should not be successful.   One of the principal ameliorative policy goals of ERISA, as

6

amended by MPPAA, is to help pension funds meet their obligations to their beneficiaries. *Connors v. P & M Coal Co.*, 801 F.2d 1373, 1376-78 (D.C. Cir. 1986) (discouraging future participation in multiemployer pension plans is "clearly contrary" to one of MPPAA's stated objectives and stated policy of MPPAA is to alleviate conditions "which tend to discourage the maintenance and growth of multiemployer pension plans;" concluding that these policy objectives are a reason to reject trial court's "interest and control" test that was used to hold owner-officers/operators of corporation to be jointly and severally liable for corporation's withdrawal liability). By discouraging investment in struggling or distressed companies that are contributors to under-funded pensions, however, the application of NETTIPF's evade-or-avoid theory undermines this goal.

Overall, NETTIPF should not be allowed to add an "evade-or-avoid" claim to its pleading because it is not legally viable. *See Universal Commc'ns Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418-27 (1st Cir. 2007) (finding denial of leave to amend was proper because additional factual allegations did not fit the legal claims and theories that plaintiff sought to bring).

### B.      Untimeliness

*Second*, NETTIPF's motion to amend is untimely. A motion to amend may be denied "if a proffered amendment comes too late." *Todisco*, 497 F.3d at 98 (citing *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006)) (internal quotations omitted). NETTIPF's amendment was requested after the close of fact discovery, and its motion for leave to amend has been filed after the continuation of a deposition at which the court allowed NETTIPF to ask about the "evade-or-avoid" counter-claim and after an apex deposition of the co-CEO of Sun Capital Advisors, Inc. at which the counter-claim was a subject of examination. When NETTIPF stated at the April 19, 2011 hearing that it only discovered the basis of this claim late in the discovery

process, the Court recognized that this claim should have been obvious to NETTIPF much earlier. (Hr'g Tr. 37:18-24, Apr. 19, 2011 ("MS. BUSHEY: But we weren't aware of this other claim until these last documents came out. . . .  It just wasn't on our radar until we received these motions.  THE COURT:  I cannot understand why it would not have been."))  When a claim should have been obvious to the movant, courts have rejected amendments that were sought at a later time.  *See, e.g.*, *Torres-Rios v. LPS Labs., Inc.*, 152 F.3d 11, 16 (1st Cir. 1998).  Indeed, the fact essential to NETTIPF's "evade-or-avoid" theory—the ownership split of SSB-LLC—has been known to NETTIPF since before this lawsuit began.  And the fact that agents involved with investment decision-making for the Plaintiffs were aware that SBI was a contributor to a plan with unfunded pension liabilities was plain to NETTIPF since at least December 2010 when the final due diligence memorandum for the SBI acquisition was produced by Plaintiffs.  (*See* Ex. A at 7.)  "Rule 15(a)'s liberal amendment policy seeks to serve justice, but does not excuse a lack of diligence that imposes additional and unwarranted burdens on an opponent and the courts."  *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 53 (1st Cir. 1998).

Ultimately, it is NETTIPF's responsibility to prosecute its case diligently.  Plaintiffs and the Court should not be burdened as a result of NETTIPF's failings.  The lateness of NETTIPF's request combined with the lack of relation between its new claim and the proceedings and discovery to date constitutes undue delay.  "[W]hen considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some valid reason for his neglect and delay."  *Id.* at 52 (internal citation and quotation marks omitted); *see also LaRocca v. Borden*, 276 F.3d 22, 32 (1st Cir. 2002) (affirming denial of motion to amend where plaintiffs filed the motion after completion of discovery and were given previous opportunities to amend).

C.      **Undue Prejudice**

*Third*, NETTIPF's motion to amend unduly prejudices the prosecution of Plaintiffs' case. Another reason for denying leave to amend is "undue prejudice to the opposing party by virtue of allowance of the amendment." *Acosta-Mestre*, 156 F.3d at 51 (internal citation and quotation marks omitted).  Undue prejudice results if a party's trial strategy and tactics would likely be affected by an amendment.  *See Tiernan v. Blyth, Eastman, Dillon & Co.*, 719 F.2d 1, 4-5 (1st Cir. 1983).  Because NETTIPF is adding an entirely new claim premised on an entirely distinct theory of liability and set of facts, it is certainly true that Plaintiffs' litigation preparation and strategy will have to be changed and expanded, no matter how implausible its "evade-or-avoid" claim is revealed to be when carefully examined.  Moreover, Plaintiffs are also unduly prejudiced by the burden of having to spend additional time and expense to oppose this untimely added claim.  *See Torres-Rios*, 152 F.3d at 16 ("Allowing addition of a new theory of liability . . . after discovery had closed . . . unquestionably would prejudice defendant, whose focus until that time had been on the adequacy of the warning labels and not on the costs and benefits of the product itself."); *see also Sanders v. Int'l Union of Operating Eng'rs, Local 150*, 6 F. App'x 443, 445 (7th Cir. 2001).  Although the Court did not allow "additional" discovery on NETTIPF's "evade-or-avoid" claim, this is not necessary for undue prejudice to result.  *See Tiernan*, 719 F.2d 1.  Moreover, NETTIPF has been allowed to obtain discovery on this claim after the fact discovery cut-off date of February 1, 2011.  At the April 19, 2011 hearing, the Court ordered the continuation of the deposition of M. Steven Liff for the sole purpose of allowing NETTIPF to question him on matters that only have relevance for its "evade-or-avoid" theory.  Marc Leder, co-CEO of Sun Capital Advisors, Inc., was also required to answer questions on this subject at his deposition.  (Ex. B (Leder Dep. 47:16-56:8.))

K&E 19111454.7

In sum, the Plaintiffs have been unduly prejudiced by NETTIPF's late motion to amend its complaint.  They have and will continue to incur substantial time and expense in preparing to defend against a newly added claim that is unrelated to the proceedings to date, premised on a new set of facts, and brought late in the day even though the central facts upon which this claim is based were known to NETTIPF since the beginning of the lawsuit.

## III.   CONCLUSION:

For the reasons provided above, Plaintiffs oppose NETTIPF's Motion to Amend the Complaint and state for the record their arguments against NETTIPF being allowed to add an "evade-or-avoid" counter-claim to its pleading.   Accordingly, NETTIPF's motion to amend should be denied.

Respectfully submitted,

Plaintiffs/counter-defendants
SUN   CAPITAL   PARTNERS   III,   LP,
SUN   CAPITAL   PARTNERS   III   QP,   LP,   and
SUN CAPITAL PARTNERS IV, LP

By their Attorneys:

/s/ Theodore J. Folkman
Theodore J. Folkman, BBO # 647642
Murphy & King, Professional Corp.
One Beacon Street
Boston, MA 02108
(617) 423-0400
tjf@murphyking.com

John F. Hartmann, P.C.*
Marla Tun*
Zubin P. Khambatta*
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
(312) 862-2000
john.hartmann@kirkland.com
marla.tun@kirkland.com
zubin.khambatta@kirkland.com

* Admitted *pro hac vice*


Dated: June 10, 2011

K&E 19111454.7

**Certificate of Service**

I certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 10, 2011.

/s/ Theodore J. Folkman

K&E 19111454.7