UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SUN CAPITAL PARTNERS III, LP,      )
SUN CAPITAL PARTNERS III QP, LP, )
and SUN CAPITAL PARTNERS IV, LP, )
                                   )
          Plaintiffs/             )        CIVIL ACTION NO.
          Counter-Defendants,     )        10-10921-DPW
v.                                 )
                                   )
NEW ENGLAND TEAMSTERS AND          )
TRUCKING INDUSTRY PENSION FUND,   )
                                   )
          Defendant/              )
          Counter-Plaintiff.      )

MEMORANDUM & ORDER
November 26, 2018

Having prevailed in this action after remand from the Court

of Appeals, the defendant, New England Teamsters and Trucking

Industry Pension Fund ("the Pension Fund"), brought the motion

pending before me under Fed. R. Civ. P. Rule 59(e) to amend the

resulting judgment.  Specifically, the Pension Fund contends

that the remand judgment was entered in error because it failed

to include interest, liquidated damages, and attorney fees and

costs, as required by 29 U.S.C. § 1132(g)(2).  A Rule 59(e)

motion should be granted "when the original judgment evidence[s]

a manifest error of law . . ." *Biltcliffe* v. *CitiMortgage, Inc.*,

772 F.3d 925, 930 (1st Cir. 2014) (citation and internal

quotation marks omitted).  There was plainly such error here.

The plaintiff limited partnerships, collectively referred

to as "Sun Funds", initially opposed the motion to amend not on

the merits, but on procedural grounds.  After a further

explanatory submission by counsel for the Pension Fund, Sun

Funds withdrew certain of its grounds for opposition.  Because

the Sun Funds' opposition implicates important procedures

independently enforceable by the court itself and because the

underlying merits of my disposition on remand seemed to me to

require some further reflection, I have used consideration of

the motion to amend the judgment to engage *sua sponte* in full

reconsideration of the remand decision.  This Memorandum

explains my determination to amend the judgment only to the

extent requested by the Pension Fund and to leave unmodified the

Pension Fund's status as prevailing party.

## I. MANIFEST ERROR

At issue in the case is the obligation of Sun Funds to make

contributions to the Pension Fund under the Multiemployer

Pension Plan Amendments Act ("MPPAA") which amended the Employee

Retirement Income Security Act ("ERISA").  When judgment is

awarded in favor of a pension plan in such a suit, ERISA

requires a court to award:

        (A) the unpaid contributions,
        (B) interest on the unpaid contributions,
        (C) an amount equal to the greater of--
            (i) interest on the unpaid contributions, or
            (ii) liquidated damages provided for under the plan in
            an amount not in excess of 20 percent (or such higher
            percentage as may be permitted under Federal or State
            law) of the amount determined by the court under
            subparagraph (A),

```
(D) reasonable attorney's fees and costs of the action, to
    be paid by the defendant, and
(E) such other legal or equitable relief as the court deems
    appropriate.
```

29 U.S.C. § 1132(g)(2).

The initial judgment I entered on remand awarded only the amount of the unpaid contributions under § 1132(g)(2)(A) and failed to include the additional, mandatory remedies under § 1132(g)(2)(B)-(D).  Through its motion, the Pension Fund seeks in excess of $2,253,787.76 in interest, $903,307.80 in liquidated damages, and $340,977.58 in attorneys' fees and costs.[1]  It is uncontested that the judgment I entered on remand was manifestly in error as a result of the failure to include these mandatory items.  Barring some disqualifying misstep by the Pension Fund, if the underlying declaratory judgment for the Pension Fund stands, it must be modified to incorporate award of the additional items sought by the Pension Fund.  I will take up the missteps identified by the Sun Funds in Parts II and III before reporting the results of my further consideration of the underlying judgment in Part IV.

---

[1]  Given the passage of time between the filing of the motion to amend and my allowance on the basis of this motion, the additional mandatory interest remedy must be recalculated to reflect the time value of the judgment to which the Pension Fund is entitled.  I will direct the parties to submit promptly an agreed upon amended judgment to embody the determination I have made in this Memorandum and Order.

## II. LOCAL RULE 7.1

The Sun Funds initially asserted that the Pension Fund's Rule 59 motion should be denied in its entirety for failure to comply with Local Rule 7.1.  Local Rule 7.1(a)(2) provides that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue."  Here, the Pension Fund's motion included no certification of compliance with Rule 7.1.  The Sun Funds assert – and the Pension Fund does not contest – that the Pension Fund's counsel in fact never conferred with them on this issue before filing its motion.

Local Rule 7.1 plays an important role in the practices and procedures of this District. "[I]t fosters discussion between parties about matters before they come before the court, and it preserves scarce judicial resources."  *Martinez* v. *Hubbard*, 172 F. Supp. 3d 378, 385 (D. Mass. 2016).  It is "not an empty exercise."  *Id.*  Sanctions for non-compliance are both available and appropriate.  Moreover, because the Rule protects judicial resources as much as it protects opposing parties, there is no need to show prejudice to a party for sanctions to attach.  *Converse Inc*. v. *Reebok Int'l Ltd*., 328 F. Supp. 2d 166, 170 (D. Mass. 2004).

However, while dismissal of a non-compliant motion is available as a sanction, *id.* at 174 n.7, such a sanction is not

4

appropriate for every violation of the Rule.  *See Gerakaris* v.

*Champagne*, 913 F. Supp. 646, 651 (D. Mass. 1996) ("[W]hile a

litigant's failure to observe the Local Rules invites sanctions,

omitting to confer prior to filing a motion certain to be

opposed does not warrant so severe a sanction as summary

denial."); *Edwards* v. *New England Tel. & Tel. Co.*, 86 F.3d 1146

(1st Cir. 1996) (per curiam) (approving of the district court's

analysis in *Gerakaris*).[2]

Here, it does not appear that a pre-motion conference

between the parties would have changed the parties' fundamental

positions.  Moreover, the motion is one of considerable

significance, involving the otherwise mandated award of

additional judgment amounts in the millions of dollars.  It

would be entirely disproportionate to dismiss the motion

outright in response to this Rule 7.1 violation.

In response to the Sun Funds' initial opposition to the

motion to amend, the Pension Fund's counsel presented a

compelling personal explanation for her failure to comply with

Rule 7.1 in connection with this motion.  Had this explanation

---

[2] Monetary sanctions are also available under the Local Rule.
*See Martinez* v. *Hubbard*, 172 F. Supp. 3d 378, 385 (D. Mass.
2016).  But the Sun Funds have not requested monetary sanctions
and, in any case, I find them unnecessary and inappropriate for
the same reasons I decline to sanction the Pension Fund's
failure to consult about the motion by denying the underlying
motion.

been invoked in the consultation, the Local Rule 7.1 grounds to

oppose the Pension Fund's motion to amend would have been

obviated, as is evidenced by the withdrawal of this ground for

opposition by the Sun Funds after receiving the explanation

belatedly provided by Pension Fund's counsel.  While I reaffirm

the central role that Local Rule 7.1 plays in the procedures of

this district, the particular violation before me does not

require sanction.  Nevertheless, I will use this occasion to

outline the practice pursued in this session regarding any

motion filed without a Local Rule 7.1 certification regarding

consultation.

Prompted by the issues raised by this motion and an

awareness that Local Rule 7.1 certification has been subject to

considerable backsliding since its adoption, I have introduced a

practice in my session of denying — without prejudice to

compliant resubmission — any motion not accompanied by a Local

Rule 7.1 certification in the absence of a showing that

obtaining such a certification is not feasible.  While counsel

may view consultation as inefficient or, otherwise, a needless

bother and consider the likelihood of resolving or narrowing the

issues unlikely, there is no harm in requiring that such an

attempt be made.  In fact, there is considerable benefit to

requiring lawyers to take the time to discuss motion practice

because it provides an occasion short of formal court hearings

for adversaries to consider their respective cases from

something broader than a blinkered unilateral approach.

Of course, if counsel are not prepared to comply with the

spirit of the Rule, the immediate substantive benefit of

consultation is unlikely to be fully satisfactory.  But

compliance with the formalities anticipated by the letter of the

rule is a necessary first step.  The alternative of ignoring

non-compliance with the formality will ultimately make a dead

letter of the Rule.  Attaching increased transaction costs for

non-compliance, such as likely denial and the requirement of

compliant resubmittal in order to secure the relief sought,

seems a measured step to encourage that the Rule's letter — and,

hence, its spirit — will be observed.

### III. FEDERAL RULES OF CIVIL PROCEDURE 59 AND 54

In addition to their broad initial challenge under Local

Rule 7.1, the Sun Funds also attack the propriety of awarding

attorneys' fees and costs at this point given the interplay

between Federal Rules of Civil Procedure 54 and 59.  This aspect

of their argument does not extend to the Pension Fund's claims

for interest and liquidated damages, nor do the Sun Funds

contest the methods of calculation of the interest and

liquidated damages sought.

The Sun Funds assert that attorney fees and costs are not

appropriate subjects of a Rule 59 motion, because they are

instead properly addressed under a Rule 54(d) motion for fees.

Under clear Supreme Court precedent, this is so as a general

proposition.  *White* v. *New Hampshire Dep't of Employment Sec.*,

455 U.S. 445, 451 (1982) ("[F]ederal courts generally have

invoked Rule 59(e) only to support reconsideration of matters

properly encompassed in a decision on the merits.  By contrast,

a request for attorney's fees . . . raises legal issues

collateral to the main cause of action - issues to which Rule

59(e) was never intended to apply.") (internal citations

omitted);[3] *see also Bender* v. *Freed*, 436 F.3d 747, 750 (7th Cir.

2006) (under ERISA, attorneys' fees properly brought under Rule

54).

The difference in vehicle for pursuing attorneys' fees

involves a difference in the required timing for seeking them.

Rule 59 motions may be filed up to 28 days after judgment; the

Pension Funds' motion was filed on the 28th day.  Rule 54

---

[3] In contrast, Rule 59(e) is the "proper procedural vehicle" for
awards of interest, whether mandatory or discretionary.  *Crowe*
v. *Bolduc*, 365 F.3d 86, 92-93 (1st Cir. 2004) (citing *Osterneck*
v. *Ernst & Whinney*, 489 U.S. 169 (1989)).  The liquidated
damages at issue here are clearly not "collateral" to the merits
of the case – indeed, they are tightly linked to interest under
the statutory scheme and are meant to "remedy the injury giving
rise to the [underlying] action"; consequently, they likewise
fall within the ambit of Rule 59.  *Cf. Osterneck*, 489 U.S. at
176 n.3 (quoting *Budinich* v. *Becton Dickinson & Co.*, 486 U.S.
196, 200 (1988)).  Understandably, the Sun Funds do not
challenge the interest and liquidated damages sought on grounds
that Fed. R. Civ. P. 59(e) is not the proper grounds to pursue
them.

motions for attorneys' fees, in contrast, must be filed "no
later than 14 days after the entry of judgment."  Fed. R. Civ.
P. 54(d)(2)(B)(i).  Thus, at first glance, the portion of the
Pension Funds' motion seeking attorneys' fees – effectively a
Rule 54 motion – seemingly came two weeks late and should be
denied.  *Alexander* v. *Weiner*, No. 09-10776-JLT, 2013 WL 5817578,
at *3 (D. Mass. Oct. 28, 2013) (failure to timely file Rule 54
motion grounds for denial) (quoting *Logue* v. *Dore*, 103 F.3d
1040, 1047 (1st Cir. 1997)).

The interplay between Rules 54 and 59 in this case,
however, effectively revives the Pension Fund's motion.  The
timely-filed Rule 59 motion and its success in securing
liquidated damages and interest undoes the finality of the
earlier March 28, 2016 judgment, and consequently renders a new
Rule 54 motion for attorneys' fees timely.  While the First
Circuit has not definitively addressed this issue, s*ee Drumgold*
v. *Callahan*, 806 F. Supp. 2d 428, 434 (D. Mass. 2011), I
conclude that the applicability of Rule 54 in this setting is
clear and supportive of the Pension Fund's initiative to pursue
attorney fees through a motion to amend the judgment.

Rule 54(d) starts the clock for a motion for attorneys'
fees from the date of "judgment."  As the Advisory Committee
Notes underscore, this refers to "final judgment."  Fed. R. Civ.
P. 54 Advisory Committee Note (1993); *see also Miltimore Sales,*

*Inc*. v. *Int'l Rectifier, Inc*., 412 F.3d 685, 688 (6th Cir.

2005).  And, as the Advisory Committee Notes to Rule 59 make

plain, Rule 59 motions "affect the finality of the judgment."

Fed. R. Civ. P. 59 Advisory Committee Notes (1995).  The

judgment only becomes final once the Rule 59 motion is disposed

of.  At that point, the 14-day clock of Rule 54(d) recommences.

     Case law outside the First Circuit supports this approach.

The Courts of Appeals that have considered this issue have all

reached the conclusion that any Rule 59 motion resets the 14-day

period for attorneys' fee motions.[4]  So, too, has the only

---

[4]  *Radtke* v. *Caschetta*, 822 F.3d 571, 574 (D.C. Cir. 2016)
("[W]hile appellants' fee petition originally was untimely, the
court's entry of an amended judgment created '[a] new period for
filing' and cured that untimeliness . . . ."); *Bailey* v. *Cty. of
Riverside*, 414 F.3d 1023, 1025 (9th Cir. 2005) ("[T]he Rule
54(d)(2)(B) motion for fees is timely if filed no later than 14
days after the resolution of a Rule 50(b), Rule 52(b), or Rule
59 motion."); *Miltimore Sales, Inc*. v. *Int'l Rectifier, Inc*.,
412 F.3d 685, 691 (6th Cir. 2005) ("On January 2, 2002,
International Rectifier, Inc. filed a Rule 59 motion that
destroyed the finality of the December 19, 2001 judgment. Thus,
while we only know this retrospectively, and Miltimore Sales,
Inc. could not have known this at the time, the fourteen-day
period did not begin to run."); *Members First Fed. Credit Union*
v. *Members First Credit Union of Florida*, 244 F.3d 806, 807
(11th Cir. 2001) (per curiam) (same); *Weyant* v. *Okst*, 198 F.3d
311, 315 (2d Cir. 1999) ("Because the 14–day period established
by Rule 54(d)(2)(B) for the filing of a motion for attorneys'
fees was introduced in large part to avoid piecemeal appeals of
merits and fee questions, that 14–day period begins to run with
the entry of a final judgment. And because the finality of a
judgment is negated by the timely filing of a motion under Rule
50(b), 52(b), or 59, we conclude that a Rule 54(d)(2)(B) motion
is timely if filed no later than 14 days after the resolution of
such a Rule 50(b), 52(b), or 59 motion.").

reported decision in this District — of which I am aware — that has confronted the issue.  *Drumgold*, 806 F. Supp. 2d at 435.

Notably, these courts do not distinguish between post-trial motions made before and after the expiration of the period for fee requests, as the Sun Funds argue must be done.  Because a Rule 59 motion destroys the finality of judgment, its effect on the timing of fee requests is not a matter of tolling the 14-day period, in which case the relative timing of the post-trial motion might be of import, but rather the creation of an altogether new 14-day period by an amended judgment.

The 2009 revisions to the Federal Rules of Civil Procedure, which changed the relevant time periods, have not undercut this approach.  *Sorenson* v. *Wolfson*, 170 F. Supp. 3d 622, 628 (S.D.N.Y. 2016) ("Cases decided after the 2009 amendments have continued to interpret *Weyant* [v. *Okst*, 198 F.3d 311 (2nd Cir. 1999)] as establishing that a 'motion for attorney's fees is timely under FRCP 54(d)(2)(B) when filed within 14 days after the entry of judgment, or within 14 days of the resolution of postjudgment motions.'") (quoting *Farinella* v. *EBay, Inc*., No. 05-CV-1720, 2011 WL 1239959, at *2 (E.D.N.Y. Mar. 30, 2011)).[5]

---

[5]  Additionally, *Sorensen* directs attention to *Slep-Tone Entm't Corp.* v. *Karaoke Kandy Store, Inc.*, 782 F.3d 313, 317 (6th Cir. 2015); *Watrous* v. *Borner*, 995 F. Supp. 2d 84, 88 (D. Conn. 2014) ("[U]nder *Weyant*, a party's motion for attorney's fees is timely, unless filed outside the fourteen-day window following the court's last ruling on any pending Rule 50(b), 52(b), or 59

Indeed, following the 2009 revisions, the D.C. Circuit joined its sister circuits in holding that "a fee petition is timely if filed no later than 14 days after the resolution of a Rule 50(b), Rule 52(b), or Rule 59 motion." *Radtke* v. *Caschetta*, 822 F.3d 571, 573 (citations and internal quotation marks omitted).

The only divide among courts concerns whether all Rule 59 motions reset the clock, or whether only successful motions do so.  One district court has held the latter. *See Mary M.* v. *N. Lawrence Cmty. Sch. Corp.*, 174 F.R.D. 419, 422 (S.D. Ind. 1997). In *Mary M.*, Chief Judge Barker relied on the text of Rule 54, which sets forth the 14-day time limit; on a comparison of Rule 54 to Federal Rule of Appellate Procedure 4(a), which more explicitly discusses the effect of post-judgment motions on the finality of judgment; and, most persuasively, on the Advisory Committee Notes to Rule 54, which state that "A new period for filing will automatically begin *if a new judgment is entered* following a reversal or remand by the appellate court or the granting of a motion under Rule 59."  *Id.;* Fed. R. Civ. P. 54 Advisory Committee Notes (1993) (emphasis supplied).  Chief Judge Barker emphasized that had she "granted a motion for a new

---

motions ....”), appeal dismissed, (Sept. 19, 2014); *Registry Sys. Int'l, Ltd.* v. *Hamm*, No. 08cv00495 (PAB)(MJW), 2012 WL 4476635, at *5 (D. Colo. Sept. 28, 2012) ("[The plaintiff] is correct that the 14 day period does not begin to run until after the Court rules on the Rule 59(e) motions.").  *Id.*

trial or for amendment of the judgment under Fed. R. Civ. P. 59,

thus vacating or changing the original judgment, a new period

for filing fee petitions would have begun at that time."  *Mary*

*M.*, 174 F.R.D. at 422.[6]

In this case, I will first grant the Pension Fund's Rule 59

motion as to interest and liquidated damages.  The question of

when a Rule 54 fees motion may be brought when a Rule 59 motion

is denied is consequently not before me.  But as to whether a

successful Rule 59 motion allows for another 14 days during

which attorneys' fees can be requested, there can be no doubt.

This case falls under the clear instructions of the Advisory

Committee Notes requiring a "new period for filing" fee

petitions.  Fed. R. Civ. P. 54 Advisory Committee Notes (1993).

Given an amendment of the judgment under Fed. R. Civ. P.

59, the Pension Fund requested attorneys' fees in a timely

manner and subsequently submitted the requisite estimate and

documentation of a specific fee amount.  Fed. R. Civ. P.

---

[6]  The Sun Funds attempt to distinguish this aspect of *Mary M.* by
arguing that the Rule 59(e) motion at issue here does not truly
change the original judgment because it does not affect the
merits of the case or the right to attorneys' fees.  This is an
area of law, however, where the Supreme Court has instructed
that implementing a "bright-line rule" is particularly
important.  *Budinich* v. *Becton Dickinson & Co.*, 486 U.S. 196,
202 (1988).  The Federal Rules of Civil Procedure have provided
such a bright-line rule.  I decline to blur that line with case-
by-case determinations of when an amendment of a judgment,
involving merits questions, sufficiently addresses the "true"
merits of the case.

54(d)(2)(B)(iii).  Because the request for attorneys' fees is
procedurally sound and mandatory under the MPPAA, I must grant
reasonable fees and costs if the underlying judgment is
sustained.

In addressing requests for attorney fees, I must choose
when, relative to the pending appeal, to rule on that request.
When attorneys' fees are sought and an appeal on the merits of
the case has also been taken, a court has three options.  It
"may rule on the claim for fees, may defer its ruling on the
motion, or may deny the motion without prejudice, directing
under subdivision (d)(2)(B) a new period for filing after the
appeal has been resolved."  Fed. R. Civ. P. 54, Advisory
Committee Notes to 1993 Amendments.  The First Circuit has
instructed that, in general, "the better practice . . . [is] to
set the fee at the conclusion of the trial, allowing the parties
to appeal the fee award along with any substantive issues."
*Tobin* v. *Liberty Mut. Ins. Co.*, 553 F.3d 121, 149 (1st Cir.
2009).  That guidance notwithstanding, the First Circuit also
recognizes the discretion of a district court to choose between
these options for "pragmatic" reasons such as "judicial
efficiency."  *Id.*  Although some districts have developed local
rules requiring a particular approach, *see, e.g.,* D. Me. Local
Rule 54.2 (fee applications must be made after final disposition
of appeals), the District of Massachusetts has not done so.

14

Adjudicating fee disputes immediately, rather than after the conclusion of an appeal, carries certain benefits.  In particular, it allows resolution "while the services performed are freshly in mind," and it facilitates the joint appellate review of fee issues "at the same time as review on the merits of the case."  Fed. R. Civ. P. 54, Advisory Committee Notes to 1993 Amendments.  For this reason, it is common for courts to address fees even while appeals are pending.  *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.,* No. CIV.A. 03-3924, 2007 WL 4287393, at *2 (E.D. Pa. Dec. 4, 2007) (collecting cases).

On the other hand, judicial efficiency often supports tabling the fee issue until after appeal.  *See* Fed. R. Civ. P. 58, Advisory Committee Notes to 1993 Amendments ("Particularly if the claim for fees involves substantial issues or is likely to be affected by the appellate decision, the district court may prefer to defer consideration of the claim for fees until after the appeal is resolved.").  This is especially so where courts foresee an appellate decision potentially affecting the availability of fees.  *See, e.g., Madrid* v. *Concho Elementary Sch. Dist. No. 6 of Apache Cty.*, No. CV-07-8103-PCT-DGC, 2010 WL 2991562, at *1 (D. Ariz. July 26, 2010); *Certusview Techs., LLC* v. *S & N Locating Servs., LLC*, No. 2:13CV346, 2015 WL 3466842, at *2 (E.D. Va. June 1, 2015).  Balancing these values is deeply context-dependent.  *Compare Barrella* v. *Vill. of Freeport*, 56 F.

Supp. 3d 169, 173 (E.D.N.Y. 2014) *with Mhany Mgmt. Inc*. v. *Inc.*
*Vill. of Garden City*, 44 F. Supp. 3d 283, 286 (E.D.N.Y. 2014)
(same judge, in similar cases, reaching different conclusions
based on procedural posture of each case and appeal).

In this circumstance, I will follow the First Circuit's
preferred approach and resolve the fee dispute at this point.
This sequencing offers particular benefits here, where there is
no factual dispute over the reasonable amount of attorneys' fees
owed; only the previously discussed legal dispute about
procedural elements of the fee requests is at issue.  The
uncontested figure of attorneys' fees and costs incurred by the
Pension Fund at this point is $340,977.58 and will be added to
the judgment in this case if the underlying judgment is
maintained.  I turn now to address that issue.

### IV. THE UNDERLYING REMAND DETERMINATION

I have taken the occasion provided by consideration of the
motion to amend the judgment to engage in a full reconsideration
of the decision I initially issued in support of the judgment on
remand.  After extensive re-evaluation, I am fully satisfied
that the remand decision faithfully follows the teachings of the
First Circuit's remand directions.  *See generally Sun Capital*
*Partners III* v. *New England Teamsters,* 724 F.3d 129 (1st Cir.
2013).  I am satisfied as well that my decision granting summary
judgment on remand to the Pension Fund fairly accommodates the

"tensions that stem irremediably from differences between the goals of the MPPAA and the formalism of the tax code." *Sun Capital Partners III*, 172 F. Supp. 3d at 460.  That decision on remand, supplemented by this Memorandum and Order, continues to reflect my best justification for the proper resolution of this exceedingly fact intensive and complex matter and I find no reason to modify, refine, or reformulate the grounds for that resolution.

Nevertheless, I am acutely aware that the result disrupts hopeful expectations by the private equity plaintiffs in this case and in other similar settings where withdrawal liability might be asserted against them.  However, in the absence of further meaningful direction from Congress and/or orderly rulemaking by the PBGC, *cf. Sun Capital Partners III*, 724 F.3d at 148, the current applicable law in this area requires the resolution reflected in the amended judgment that will be issued in connection with this Memorandum and Order.

The private equity plaintiffs here chose in their calculus of risk and return to structure their business to breach what the First Circuit accurately characterized as "fine lines," *Sun Capital Partners III*, 724 F.3d at 148, governing the circumstances in which withdrawal liability will be imposed upon those who invest in distressed businesses.  Their expectations, in the absence of definitive supporting authority, that this

17

effort to avoid ERISA obligations would be without consequence was a risky gambit. Its choice has resulted in a diminished return for their investments. Any recalibration of the reasonable expectations of investors in companies with ERISA obligations must come from some source other than courts applying current applicable law.

### V. CONCLUSION

For the reasons set forth above, the Pension Fund's Motion to Amend the Judgment [Dkt. No. 185] is GRANTED IN PART. In accordance with Fed. R. Civ. P. 59, the Judgment of this court will be amended to include interest in the amount of not less than $2,253,787.76; liquidated damages in the amount of $903,307.80; amendment of the judgment having been allowed, I GRANT the remainder of the Motion [Dkt. No. 185] pursuant to Fed. R. Civ. P. 54, awarding attorneys' fees and costs in the amount of $340,977.58. Given the passage of time since the filing of the Motion to Amend, the parties shall file on or before November 30, 2018 a proposed agreed upon amended judgment bringing current the time value dimension to the amended judgment being entered.

/s/ Douglas P. Woodlock
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE